753 So.2d 434 (2000)
Anna STROUSE, Plaintiff-Appellee,
v.
M & M PROPERTIES, Millard Matthews, & Alpha Mobile Home Park, Defendants-Appellants.
No. 32,792-CA.
Court of Appeal of Louisiana, Second Circuit.
March 3, 2000.
*436 Hargrove, Pesnell & Wyatt by Scott C. Sinclair, Shreveport, Counsel for Appellants.
*437 Mills, Timmons & Flowers by David C. Turansky, Shreveport, Counsel for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
BROWN, J.,
In this action for personal injuries arising out of an accident which occurred on rental property occupied by plaintiff and owned and operated by defendants, both parties appeal the trial court's judgment finding defendants liable for plaintiff's injuries. For the reasons set forth below, we reverse in part, amend in part, and as amended, affirm.

Facts and Procedural Background
In April 1994, plaintiff, Anna Strouse, and her friend, Wendy Williams, moved from Dallas, Texas, to Shreveport, Louisiana, seeking employment with one of the riverboat casinos. The friends planned to live in separate mobile homes at the Alpha Mobile Home Park on Flournoy-Lucas Road in Shreveport, but upon their arrival, they learned that Ms. Williams' trailer was not ready, so both, together with their children, moved into the trailer leased by Ms. Strouse which was located on Lot # 17.
After several weeks, Ms. Williams and her family moved into a separate trailer and in June 1994, Ms. Strouse and her children moved into a mobile home located on Lot # 101. Shortly thereafter, Ms. Strouse bought a washer and dryer and a very large maintenance man named Stanley assisted her in moving them into the trailer.[1] Using a dolly, Stanley pulled the appliances up a set of wooden steps leading to the back door of the mobile home. While Stanley was attempting to get the washer up the stairs, the bottom two steps collapsed beneath him.
Ms. Williams testified that later that same day, she saw Stanley show the trailer park manager the injuries to his leg and heard Stanley ask for permission to move some concrete steps from a vacant lot over to Ms. Strouse's trailer. According to Ms. Williams, the park manager refused Stanley's request.
Several weeks later, Stanley repaired the bottom two steps but nothing was done to the top stairs. Ms. Williams stated that the wooden steps would bow under Stanley's weight and that neither she nor Ms. Strouse would allow their kids to use the back stairs because of their condition. Ms. Strouse, however, testified that she and her children occasionally used the back steps despite Ms. Williams' warnings. Ms. Strouse also stated that she never complained to anyone about the condition of the stairs.
On the evening of October 23, 1994, Ms. Strouse heard a noise behind her trailer and opened the back door to investigate. As she placed her left foot on the top step, it collapsed beneath her. According to Ms. Strouse, her entire left leg fell through while her right leg remained inside the mobile home. Ms. Strouse drove to Ms. Williams' home and the two went to a nearby emergency room. Ms. Strouse stated that although her leg was "hurting" and "cut up pretty bad," and her elbow was "scraped and bleeding," the emergency room doctor did not x-ray her leg or inspect, clean or do anything else to her wounds. He also denied her request for a work excuse for the following day.
At the time of the incident, Ms. Strouse was employed as a bartender at the Isle of Capri Casino earning $6.00 an hour plus tips. As a result of her injuries, she alleges that she had to reduce her hours and ultimately she returned to Dallas where she lived with her mother before moving to Chandler, Texas, in the summer of 1995. Ms. Strouse thereafter had a series of lower-paying jobs, returning to work as a bartender only once for a brief period. For approximately three years post-accident, Ms. Strouse sought medical and chiropractic *438 treatment for hip, neck and back pain before being released to return to normal activities on October 1, 1997.
On October 23, 1995, Ms. Strouse filed suit seeking personal injury damages under La. C.C. arts. 2315 and 2317, naming as defendants the alleged owners and operators of the trailer park, M & M Properties, Millard Matthews,[2] Alpha Mobile Home Park and William Martin in his capacity as owner of M & M Properties a/k/a/ Alpha Mobile Home Park.[3]
On November 26, 1997, Ms. Strouse filed an amending and supplemental petition adding Lamayo, Inc., as a defendant. Plaintiff learned during discovery that Lamayo, Inc., is the owner of Alpha Mobile Home Park as well as the owner of the trailer located at Lot # 101. Lamayo's identity was not discovered earlier in part because neither plaintiff nor any of the defendants could locate Ms. Strouse's lease agreement for Lot # 101 and the lease agreement for Lot # 17 named M & M Properties as the owner of that particular trailer. At the time of the accident, Martin and his father were equal shareholders in Lamayo. Objecting to this pleading as untimely, Lamayo filed an exception of prescription.
Trial was held on July 24, 1998. After considering the evidence, the trial court found that defendants, M & M Properties, Lamayo, Inc., and William D. Martin, Jr., were liable for plaintiffs damages in the amount of $21,225.45. Of this amount, $12,500 was allocated as general damages, $60 was designated as lost wages and the remainder was awarded as medical expenses. The court further found that plaintiff was without fault in causing her injuries.
Both parties appealed from this judgment. On February 25, 1999, the Clerk of the First Judicial Court filed a motion to dismiss plaintiffs appeal based upon plaintiffs failure to provide requested copies or pay required fees. Without holding a hearing, the trial court granted the clerk's motion and dismissed plaintiffs appeal.

Discussion

Dismissal of Appeal
We will first address the propriety of the trial court's dismissal of plaintiffs appeal. On February 25, 1999, pursuant to a motion filed by the district clerk of court, the trial court signed an order dismissing plaintiffs appeal for failure to provide transcripts or pay costs. La. C.C.P. art. 2126 provides in pertinent part that:
(E) If the appellant fails to pay the estimated costs or the difference between the estimated costs and the actual costs, within the time specified, the trial judge, on his own motion or upon motion by the clerk or by any party, and after a hearing, shall:
(1) enter a formal order of dismissal on the grounds of abandonment; or
(2) grant a ten day period within which costs must be paid in full, in default of which the appeal is dismissed as abandoned.
The record, which includes the minutes of court, does not reflect that the trial court conducted a hearing prior to dismissing plaintiffs appeal. The court should have held such a hearing to allow plaintiff an opportunity to show why costs had not been paid. The record includes a letter from plaintiffs counsel indicating his belief that defendants should be cast with costs and stating that plaintiff would rather file *439 an answer to defendants' appeal than pay costs.
Because the trial court erred in dismissing plaintiffs appeal without holding a hearing to clarify the allocation of costs, we find the order dismissing the appeal to be without effect. We will therefore consider the assignments of error urged by both plaintiff and defendants.

Comparative Fault
According to defendants, the trial court erred in failing to assess plaintiff with any comparative fault.
At the time of plaintiffs accident, October 23, 1994, La. C.C. art. 2317 provided:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act or persons for whom we are answerable or of the things which we have in our custody.
Liability under article 2317 is strict. Loescher v. Parr, 324 So.2d 441 (La.1975). To recover under La. C.C. art. 2317, a plaintiff must prove that the thing which caused the damage was in the care, custody and control of the defendants; the thing had a vice or defect which created an unreasonable risk of harm; and plaintiffs injuries were caused by this defect. Id.[4]
According to the principles of comparative fault set forth in La. C.C. art. 2323(A), a plaintiff whose negligence contributes to her injuries shall have her damages reduced in proportion to her degree or percentage of fault. Subsection (B) further states that the provisions of article 2323(A) are applicable to any claim for damages asserted under any theory of liability, regardless of the basis of liability.[5]
Determination and apportionment of fault are factual matters and the trial court's findings will not be disturbed by the reviewing court unless they are manifestly erroneous. Clement v. Frey, 95-1119 (La.01/16/96), 666 So.2d 607; Henderson v. Sutherland's Lumber Co., 31,714 (La.App.2d Cir.03/31/99), 733 So.2d 667; Stephens v. Town of Jonesboro, 25,715, 25,716 (La.App.2d Cir.08/19/94), 642 So.2d 274, writs denied, 94-2351, 94-2557 (La.11/19/94), 646 So.2d 400.
Several months prior to her own accident, plaintiff witnessed the bottom two steps leading to the back door of her mobile home collapse beneath Stanley (the 350-400 lb. maintenance man) as he attempted to move a washing machine into her trailer. Testimony indicates that these stairs were repaired a couple of weeks after Stanley's fall. Plaintiff testified that she did not believe the steps were dangerous, although her friend Wendy Williams suggested that they should not be used. Despite Ms. Williams' warning, except for the two week period after Stanley's fall, plaintiff and her child used the steps, albeit infrequently, without incident, until plaintiffs fall several months later.
We cannot say that the trial court erred in finding no fault on the part of plaintiff. The fact that a much larger person broke two of the bottom steps while moving a heavy machine into the trailer does not necessitate a finding that plaintiff, who observed this previous incident, should *440 have thus "known" of the condition of the steps. This is particularly true in light of the fact that the broken steps were repaired. Plaintiff could have reasonably assumed that the management at that time would have replaced all of the defective steps. In addition, a reduction of plaintiff's recovery would diminish the defendant-lessor's incentive to remove unreasonable risks from his property. See Landry v. State of Louisiana, 495 So.2d 1284 (La.1986). This assignment of error is without merit.
The trial court specifically found that plaintiff was not comparatively at fault, i.e., that she was not negligent. Because we find no error, we do not reach the issue of allocation of fault and the application of the factors set forth in Watson v. State Farm, 469 So.2d 967 (La.1985).

Liability of M & M Properties and William Martin
Defendants next assert as error the trial court's imposition of liability upon M & M Properties, the partnership that owns some of the trailers in Alpha Mobile Home Park, and William Martin. According to defendants, plaintiffs failed to establish that either M & M or Martin owned the mobile home located at Lot # 101.
As set forth previously, to recover under La. C.C. art. 2317, a plaintiff must prove, inter alia, that the thing causing damage was in the defendant's custody. Article 2317 imposes strict liability on the person maintaining custody (garde) of the defective thing; this rule is premised on one's legal responsibility to keep his thing in good condition to avoid harming others. King v. Louviere, 543 So.2d 1327 (La. 1989); Loescher, supra; DeRouen v. Audirsch, 25,847 (La.App.2d Cir.06/28/94), 639 So.2d 476. Garde is the obligation imposed by law on the proprietor of a thing or on the one who avails himself of it to prevent the thing from causing damages to another. Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987).
The things in one's custody and care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); King, supra; Loescher, supra. As a general rule, the guardian of the thing is in a better position than the innocent victim to detect, evaluate and take steps to eliminate the unreasonable risk of harm arising from a defective thing. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); DeRouen, supra.
Ownership, in many cases, establishes the requisite benefit, control and authority to find garde; however, the two are not synonymous. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981); DeRouen, supra. Whether the law imposes a duty of garde upon a particular defendant is a factual inquiry. Doughty v. Insured Lloyds Insurance Co., 576 So.2d 461 (La.1991); King, supra; DeRouen, supra.
As noted by the supreme court in Graves v. Page, 96-2201 (La.11/07/97), 703 So.2d 566, 570:
Strict liability implies that neither the defendant nor a third party has been negligent or has committed an intentional tort, but the defendant is liable because he bears a certain relationship to the injury-causing instrumentality. Since Loescher v. Parr, 324 So.2d 441 (La.1975), our courts have held the defendant liable if he or she bore a legally significant relationship to a thing, building, person, animal or product that presented an unreasonable risk of harm. (Footnote omitted).
We must therefore determine whether the record supports a finding that M & M Properties and/or Mr. Martin had a legally significant relationship to the mobile home, i.e., that they maintained some sort of direction and control over the trailer and received any benefit from it.
*441 First, as to M & M Properties, there is absolutely no evidence that the partnership had custody or garde of the trailer at Lot # 101. Neither plaintiff nor defendants had a copy of the lease agreement for Lot # 101. Therefore, the only lease entered into evidence was for the mobile home at Lot # 17 (the trailer in which plaintiff first resided) and it provides: "Lot number 17 of Alpha Mobile Park, 433 Flournoy-Lucas Road, belonging to M & M Properties...." While this language is indicative of the partnership's ownership of the trailer at Lot # 17, it does not support the conclusion that M & M Properties had an interest, proprietary or otherwise, in the mobile home at Lot # 101, especially in light of Mr. Martin's testimony that the ownership of the trailers was not unified or consistent.
However, we find no error in the trial court's imposition of liability upon Mr. Martin. It is evident from the record that Mr. Martin was evasive and uncooperative on the issue of ownership of the property, both during discovery and at the trial of this matter. For example, Mr. Martin failed to identify Lamayo, Inc., as the owner of Alpha Mobile Home Park in his responses to plaintiffs requests for production of documents and interrogatories. In fact, the issue of Lamayo's ownership did not arise until Mr. Martin's deposition.
During his deposition, Mr. Martin stated that Lamayo was the owner of Alpha Mobile Home Park. He testified at trial, however, that Lamayo doesn't own the trailer park and, concerning the issue of ownership, stated, "I don't know exactly what you're asking. I am telling you that Lamayo is the name of the corporation." Then at another point, he testified that Lamayo was an owner of the mobile home park. Mr. Martin also testified that he was a shareholder in Lamayo.
In denying any personal connection with the property, Mr. Martin stated that he was not listed as an owner in the Caddo Parish Tax Assessor's records. In fact, these records indicate that William P. Martin is listed as an owner of the property at 433 Flournoy-Lucas Road, also referred to as Alpha Mobile Park Home West and East. Additionally, the pages of the Alpha Mobile Park Home payments ledger which were introduced into evidence show rental payments received from plaintiff for the trailer at Lot # 101. Notably, at the bottom of these ledger pages appears the printed name and signature of Bill Martin, without any indication of his capacity.
In light of the above, we find no error in the trial court's determination that Mr. Martin had the requisite benefit, control and authority over the property to constitute garde.

Prescription
Defendants next urge that because plaintiffs claim against Lamayo was not added until December 1997, well after the one-year tort prescriptive period had expired, her claim has prescribed.
New plaintiffs and defendants may be added by amended pleadings if the applicable criteria are met. Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985); Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983); In re Gaines v. Bruscato, 30,340 (La.App.2d Cir.04/08/98), 712 So.2d 552, writ denied, 98-1272 (La.06/26/98), 719 So.2d 1059.
An amendment adding or substituting a party relates back to a timely filed petition if: (1) the amended claim arises out of the same conduct, transaction or occurrence set forth in the original petition; (2) the substitute defendant received notice of the institution of the action such that he will not be prejudiced in preparing and conducting his defense; (3) the substitute defendant knows or should know that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; and (4) the substitute defendant is not a wholly new or unrelated defendant. La. C.C.P. art. 1153; Giroir, supra; Ray, supra; *442 Thomas v. Connolly, 31,447 (La.App.2d Cir.01/20/99), 726 So.2d 1052.
The doctrine of relation back of amended pleadings should be liberally applied, particularly in the absence of prejudice. Giron v. Housing Authority of Opelousas, 393 So.2d 1267 (La.1981); Gaines, supra. Where there is some factual connexity between the original and amended assertions, together with some identity of interest between the original and the additional or supplemental party, amendment should be allowed. Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980); Russland Enterprises, Inc. v. City of Gretna, 98-676 (La. App. 5th Cir.01/26/99), 727 So.2d 1223.
Applying the four-part test set forth in Ray, supra, we find no merit to defendants' argument. First, plaintiff's amended claim against Lamayo arose out of the October 23, 1994 accident for which she sought redress in the original, timely filed petition. Second, the amended petition merely sought to name the party who owned and operated the trailer park; this party clearly received timely notice through Mr. Martin. Third, Lamayo should have known that, but for the misnaming of Alpha Mobile Home Park as a defendant in the original petition, the initial claim would have been brought against it. Finally, Lamayo is not a wholly new or unrelated defendant. As noted above, suit was initially filed against Alpha Mobile Home Park. In discovery, Mr. Martin indicated that Alpha Mobile Home Park was not a legal entity without further disclosing the entity or person(s) which actually owned the property. At trial, Mr. Martin confirmed that the only property owned by Lamayo is Alpha Mobile Home Park and a number of trailers located thereon. This situation is analogous to Ray, supra, wherein the first named defendant was Alexandria Mall, also a non-existent legal entity, and the proper named defendant was a partnership which did business as Alexandria Mall. This assignment of error is meritless.

Damages
Defendants contend that the trial court's $12,500 general damage award to plaintiff is excessive. On the other hand, plaintiff urges that this award is inadequate.
General damages do not have a common denominator, but are decided on a case by case basis. Morrison v. Kappa Alpha PSI Fraternity, 31,805 (La.App.2d Cir.04/07/99), 738 So.2d 1105; Coscino v. Wolfley, 96-0702 (La.App. 4th Cir.06/04/97), 696 So.2d 257, writs denied, 97-2317, 97-2539 (La.01/09/98), 705 So.2d 1100, 1102. General damages involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Morrison, supra; Killough v. Bituminous Casualty Corp., 28,329 (La.App.2d Cir.05/08/96), 674 So.2d 1091; Kessler v. Southmark Corporation, 25,941 (La.App.2d Cir.09/21/94), 643 So.2d 345.
The trial court has much discretion in the assessment of general damages. La. C.C. art. 2324.1. The appellate court will not disturb an award of general damages unless the record clearly shows that the trial court abused its discretion in making the award. Reichert v. State, Dept. of Transportation and Development, 96-1419 (La.05/20/97), 694 So.2d 193; Hae Woo Youn v. Maritime Overseas Corp., 92-3017 (La.10/07/93), 623 So.2d 1257.
We find no abuse of the trial court's great discretion in its award. In a case such as this one, many of the plaintiff's complaints are necessarily subjective and the trial court, which hears the plaintiff's testimony, is afforded much deference in its decision to credit that testimony. Contrary to defendants' assertion, the fact that plaintiff received only cursory treatment by the emergency room physician on the night of her accident is hardly *443 conclusive evidence that plaintiff's injuries were not serious. Instead, this evidence simply shows that plaintiff's injuries did not require emergency care.
Approximately six weeks after the accident, Dr. Frances Tompkins, an orthopedic surgeon, confirmed that plaintiff's complaints of back and neck pain were consistent with the type of accident that she had. Several chiropractors who treated plaintiff for about three years thereafter also related her back, neck and hip pain to lumbar strain sustained as a result of the accident.
Plaintiff testified that her pain reduced her ability to enjoy leisure activities she once pursued as well as interrupted and interfered with her sleep. At the time of trial, she still experienced intermittent recurrences of pain. Again, in the absence of any evidence to rebut plaintiff's testimony, the weight given to such complaints is completely within the discretion of the trial court. We cannot say that the trial court's award of $12,500 is either abusively high or low and will therefore be affirmed.
Plaintiff also urges that she is entitled to an increase in her award for lost wages, claiming that the trial court's award of only $60 is inadequate.
While lost earnings need not be precisely proven, they must be shown with reasonable certainty. Harper v. Garcia, 32,142 (La.App.2d Cir.08/18/99), 739 So.2d 996; Carter v. Brookshire Grocery Co., 29,166 (La.App.2d Cir.02/26/97), 690 So.2d 933, writ denied, 97-0782 (La.05/01/97), 693 So.2d 734. To recover, a plaintiff must show proof to reasonably establish her claim. Id.
Plaintiff stated that she was certain that she missed at least two or three days of work as a result of her injuries and the court had the benefit of plaintiffs time sheets from the casino. What was uncertain, however, was plaintiffs claim that her inability to continue working as a bartender at the Isle of Capri was connected with her injuries. The record reflects that plaintiff missed work for reasons other than those directly attributable to the accident, such as the death of a friend, the flu and a suspension relating to these absences.
Although plaintiff presented evidence that she was unable to continue working as a bartender and that she took lower-paying jobs, there was basically no evidence to show that plaintiff could not have found a job in a different field earning the same wages that she earned as a bartender. The trial court obviously did not speculate that such jobs were available and we find no error in this determination. Thus, we cannot say that the trial court erred in awarding plaintiff only $60 in lost wages.
Lastly, in her brief, plaintiff notes that there were several errors in her pretrial memorandum concerning her medical expenses and that these errors were adopted by the trial court. We will therefore reduce plaintiffs special damage award by the sum of these errors, $977.55.[6]

Conclusion
For the foregoing reasons, the judgment of the trial court is REVERSED insofar as it holds M & M Properties liable for plaintiffs damages. We also AMEND the judgment to reduce the award of special damages by $977.55. In all other respects, the judgment is AFFIRMED. Costs of this appeal are assessed in the following proportion: 75% to the remaining defendants and 25% to plaintiff.
*444 REVERSED IN PART; AMENDED IN PART AND AS AMENDED, AFFIRMED.
NOTES
[1] Witnesses estimate Stanley's weight to be anywhere between 350-400 lbs.
[2] Although Matthews remained a named defendant until the conclusion of the trial of this matter, neither plaintiff nor any of the other defendants knew who he was or how he was related to the litigation. Plaintiff's original counsel died during pendency of this suit and was thus unable to explain the naming of Matthews as a party defendant.
[3] M & M Properties, a partnership between Martin and his father, owned the mobile home at Lot # 17 where Ms. Strouse first lived.
[4] A modification to La. C.C. art. 2317 was effected by Acts 1996, 1 st Ex.Sess., No. 1, § 1, effective April 16, 1996; article 2317.1 was added and imposes liability on the owner or custodian "only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice or defect..."

We note, however, that La. C.C. art. 2695 provides that a lessor guarantees the lessee against all vices and defects regardless of knowledge. Under this article, liability is not based on fault but status as a landlord. In this respect strict liability may survive the 1996 amendment to article 2317.
[5] In Keith v. United States Fidelity & Guaranty Co., 96-2075 (La.05/09/97), 694 So.2d 180, the supreme court held that the legislative amendment to La. C.C. art. 2323, La. Acts 1996, 1st Ex.Sess., No. 3, was procedural in nature and thus subject to retroactive application.
[6] First, the charge from the Texas Imaging Center was listed as $1,025; the actual charge was $1,000. Next, Dr. Bratcher's actual bill was $1,149, not $1,068. Also, plaintiff failed to explain the trial court's award of $1,000 for North Texas Medical Holdings and in brief, does not list this amount among the damages to which she is entitled. In fact, North Texas Medical Holdings is the billing name and address for the Texas Imaging Center; therefore, the $1,000 award for NTMH is duplicative of the award for TIC and will be deleted. Finally, plaintiff asserts entitlement to reimbursement for $15 for medical reports rather than $48.55.