877 So.2d 244 (2004)
Gerald Garrett SMITH, et al., Plaintiffs-Appellants,
v.
John B. SLATTERY, Jr., et al., Defendants-Appellees.
No. 38,693-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2004.
*245 Frank M. Ferrell, Shreveport, for Appellants.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Douglas Lee Harville, Samuel W. Caverlee, Shreveport, for Appellees, John B. Slattery, Jr. & McConnell & Slattery, P.C.
Wiener, Weiss & Madison, by John M. Madison, Jr., for Appellees, James M. Johnson & Campbell, Campbell & Marvin.
Before GASKINS, MOORE and LOLLEY, JJ.
LOLLEY, J.
Gerald Garret Smith, Michael B. Smith, and Timothy Lane Smith ("the Smiths") appeal from a judgment of the First Judicial District Court, Parish of Caddo, Louisiana, sustaining a peremptory exception of prescription/peremption from a legal malpractice claim they brought against attorneys John B. Slattery, Jr. ("Slattery") and Jimmy Johnson ("Johnson"). For the following reasons, we affirm.

Facts and Procedural History
This lawsuit arises from an allegation that the defendant attorneys, Slattery and Johnson (collectively, the "appellees") committed legal malpractice in their handling of a medical malpractice case (the "medical malpractice suit") against Wallace H. Brown, M.D. ("Dr.Brown") and John D. Gladney, M.D. ("Dr.Gladney") for the death of Dorothy Garrett Smith ("Mrs.Smith") as a result of an allegedly unsuccessful surgical procedure she underwent. Originally, the medical malpractice suit was filed on behalf of Mrs. Smith's surviving husband, who died during the course of the medical malpractice suit, and her surviving sons, the Smiths. The original counsel for the Smiths was Slattery, who agreed to represent them in their claim against Drs. Brown and Gladney. Johnson also appeared of record on behalf of the Smiths.[1] Slattery had a long-standing, but intermittent, business relationship with the Smiths' late father. Slattery filed a timely Petition To Impound Medical Review Panel and For Damages, and the medical review panel met and returned an opinion favorable to the physicians on May 5, 1993.
On August 2, 1993, Slattery filed a petition for damages in the First Judicial District Court, Caddo Parish, Louisiana, seeking damages from both physicians based on the allegation that they had performed the surgery in a negligent manner, breached *246 the appropriate standard of care, and caused the death of Mrs. Smith.
Subsequent to the petition for damages being filed on behalf of the Smiths, no further efforts to move the medical malpractice suit toward prosecution were made by Slattery or Johnson. There is no evidence in the record that appellees even responded to discovery requests filed by Drs. Brown and Gladney. There is some indication that Slattery contacted other attorneys requesting assistance in the case, but nothing in the record shows that any other attorneys became officially involved.
On July 13, 1998, the medical malpractice suit was dismissed following a motion to dismiss for want of prosecution filed on behalf of the physicians. Sometime between the dismissal of the medical malpractice suit and December 10, 1999, the record shows that a meeting between the Smiths and Slattery was held regarding other legal matters Slattery was handling for the Smiths. Both parties agree that at some point during this meeting, the subject of the medical malpractice suit was discussed. The parties are in conflict regarding the actual content of the discussion, but the parties do not dispute that at that meeting, Slattery told the Smiths that there was nothing further he could do in the medical malpractice suit and that "time had run out."
The record shows that on December 10, 1999, Gerald Smith ("Gerald") signed a receipt acknowledging file materials, pleadings and other information from Slattery, regarding the medical malpractice suit. The receipt signed by Gerald does not show that among the copy of the pleadings attached that there was a copy of the motion and order for dismissal based on abandonment. The legal malpractice lawsuit, sub judice, was not brought against Slattery and Johnson until May 31, 2001.
On August 8, 2003, Slattery and Johnson filed an exception of prescription/peremption pursuant to La. R.S. 9:5606, stating that the suit against them was not filed within the one year prescriptive period that began on December 10, 1999. Oral arguments were heard and the trial court sustained Slattery's and Johnson's exception. The trial court stated in written reasons that the depositions clearly showed that by December 10, 1999, the Smiths knew that the time to pursue the medical malpractice case had "run out." This appeal ensued.

DISCUSSION
On appeal, the Smiths raise two assignments of error. In their first assignment of error, they allege that the trial court erred in finding December 10, 1999, (the date when Gerald picked up the medical malpractice file from Slattery), was the "knew or should have known" date that put the Smiths on notice that they had a potential legal malpractice suit.
When the peremptory exception of prescription is pleaded before the answer, it shall be tried and decided in advance of the trial of the case. La. C.C.P. art. 929(A). On the trial of a peremptory exception pleaded prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. When evidence has been introduced, the court is not authorized to accept the plaintiff's allegations as true. Schoen v. Walling, 31,598 (La.App.2d Cir.02/24/99), 728 So.2d 982, 985. When evidence is received on the trial of the peremptory exception, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard as articulated in Stobart v. State Through Dept. of Transp. and Development, *247 617 So.2d 880 (La.1993); Masters v. Fields, 27,924 (La.App.2d Cir.01/24/96), 666 So.2d 1333. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed evidence differently. Stobart, supra.
Prescription on claims for legal malpractice is governed exclusively by La. R.S. 9:5605 which provides, in pertinent part, as follows:
A. No action for damages against any attorney at law duly admitted to practice in this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. .... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
In Cardneaux v. Dollar, 31,718 (La.App.2d Cir.03/31/99), 731 So.2d 928, this court summarized the Louisiana Supreme Court's review of this malpractice statute as follows:
The recent opinion of our supreme court in Reeder v. North, 97-0239, (La.10/21/97), 701 So.2d 1291, provides primary guidance for the interpretation of this statute which was first enacted in l990. The court in Reeder strictly applied the statutory language specifying "the date of the alleged act, omission, or neglect" as the triggering event for the running of the three-year period of limitation. In so ruling, the court determined that the so-called "continuous representation rule" of the pre-1990 jurisprudence did not apply to delay the three year peremptioin. Additionally, the court's ruling effectively rejected the former realization of damages analysis applied in pre-1990 settings. Id. at 1298. Under the earlier analysis, the courts fixed the running of prescription, not from the time of the negligent act of malpractice, but from the time that "appreciable and actual harm" began to flow to the client in an underlying action where the malpractice of the attorney is used by the opposing litigant to defeat the client's suit. Braud v. New England Ins. Co., 576 So.2d 466 (La.1991).
Reeder specifically addressed the application of the three-year limitation; however, the same statutory "date of the alleged act, omission, or neglect" triggers the running of the one-year period of peremption assuming the client can immediately recognize that the act of malpractice occurred. The one-year limitation begins to run only from date of discovery, where the client's discovery of the act of malpractice occurs at a later date. Nevertheless, whether or not the malpractice is discovered at all, it does not prevent the running of the three-year peremptive period. Creighton v. Bryant, 34,893 (La.App.2d Cir.06/20/01), 793 So.2d 275.
The Smiths contend that at a meeting held prior to December 10, 1999, but subsequent to the July, 1998, dismissal of the medical malpractice suit, Slattery failed to informed them that their case had actually *248 been dismissed for want of prosecution and that was the reason Slattery was unable to do any thing further in the case. They argue that Slattery was "vague and obtuse" in reporting the actual status of the case at this meeting. It is their position that at no time did Slattery disclose to them that the suit could no longer be prosecuted.
Appellees contend that at that meeting Slattery made it clear to the Smiths that he had allowed "time to run out" and that he further informed them that "there was nothing left that could be done." They argue that after that meeting, it should have been obvious to the Smiths that the medical malpractice case was no longer viable and that they should have known that they had a potential legal malpractice suit against them. Appellees maintain that because the legal malpractice claim was not filed until May 31, 2001, more than a year after the conduct complained of (i.e., appellees' alleged acts, omissions, and neglect related to the Medical Malpractice Suit), the action had prescribed.
In written reasons for ruling, the trial court found that the Smiths had "sufficient factual basis that they should have known that Slattery had not done what he could have done to prevent dismissal by abandonment." Michael Smith ("Michael") testified that during the meeting he and his brothers had with Slattery, they were told by Slattery that "time had run out" and that there was nothing further Slattery could do in the case. Michael testified that he recalled asking Slattery if they should try to find another attorney to represent them in the medical malpractice suit and was told by Slattery they could if they wanted to. The Smiths reason that had Slattery made it clear to them that the medical malpractice suit had been dismissed, they would not have asked him if they should seek the advice of another attorney to handle the medical malpractice suit. Michael testified that Slattery previously informed them that he was having trouble finding an expert witness willing to testify against Dr. Brown and that they would have to wait until the elderly Dr. Brown died to pursue the matter. Following the death of Dr. Brown, but prior to the date Gerald retrieved the medical malpractice suit file, Slattery informed the Smiths that he had let "time run out on the case." Michael further testified that he and his brothers were upset with Slattery upon learning the status of the suit against the physicians. After retrieving the file from Slattery on December 10, 1999, the Smiths maintain that they contacted an attorney in Lake Charles who referred the case to another attorney in Alexandria. According to the Smiths' testimony, this attorney obtained the official court record and ultimately they were notified on January 11, 2001, that the medical malpractice case had been dismissed from lack of prosecution and that they had lost their right to proceed. The Smiths argue that the prescription period should commence on that date. We disagree.
The depositions in the record indicate that the Smiths were aware prior to December 10, 1999, that there were major problems with the medical malpractice suit such that would put a reasonable person on notice. The testimony was to the effect that the Smiths were upset with Slattery at the meeting held prior to December 10, 1999, because he allowed "time to run." We do not find that the trial court was manifestly erroneous in its finding of fact that the Smiths knew or should have known no later than December 10, 1999, that a potential cause of action against Slattery and Johnson existed for legal malpractice based upon the medical malpractice suit being dismissed for non-prosecution. *249 Accordingly, we find no merit to the first assignment of error.
In the second assignment of error, the Smiths contend that the trial court erred in granting the exception of prescription/peremption without considering their allegations of fraud (silence or inaction) on the part of Slattery. They argue that a finding of fraud would establish an exception to the peremptive period set out in La. R.S. 9:5605(E) which states that the peremptive period provided for in Subsection A shall not apply in cases of fraud, as defined in C.C. art.1953 which provides that:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
In cases of legal malpractice, the jurisprudence applying this article does so in cases where it was the fraudulent act itself that constituted the malpractice, and not for fraud in the actions taken after the legal malpractice has occurred. See Shreveport Credit Recovery, Inc. v. Modelist, 33,369 (La.App.2d Cir.05/15/00), 760 So.2d 681, writ denied, 2000-2159 (La.10/27/00), 772 So.2d 125 (where the alleged fraud was in the confection and assignment of a promissory note); Atkinson v. LeBlanc, 03-365 (La.App. 5th Cir.10/15/03), 860 So.2d 60, Ratcliff v. Boydell, 93-0362, 92-0630 (La.App. 4th Cir.04/03/96), 674 So.2d 272, amended as to interest on rehearing, (La.App. 4th Cir.05/31/96) (where the alleged fraud involved the attorney's misrepresentation of the value of a structured settlement to obtain an excessive fee).
The Smiths argue that because Slattery did not give them a copy of the motion and order to dismiss their medical malpractice suit when the file was retrieved, Slattery committed fraud. They also contend his statements concerning the status of the medical malpractice suit were obtuse and unclear to the unskilled lay person and that as an attorney he should be held to a higher standard.
Appellees argue that the alleged legal malpractice occurred when they allowed the Smiths' medical malpractice suit to be abandoned without their knowledge or consent. There is no assertion that this alleged legal malpractice involved fraud, only that Slattery subsequently engaged in fraudulent conduct by silence or inaction regarding the fact that the suit was dismissed. They contend that the Smiths' fraud assertions do not create an exception to the one-year peremptive period set forth in La. R.S. 9:5605 pursuant to Atkinson, supra. We agree.
In the instant case, the particular allegations of fraud alleged by the Smiths concern only Slattery's actions after the alleged legal malpractice occurred, namely, the neglect to take timely action in the medical malpractice case. We, therefore, find no merit to the second assignment of error.
Although, the evidence is controversial regarding the clarity of Slattery's statements regarding the dismissal of the suit, what is clear from the evidence is that Slattery gave the Smiths enough information that would place a reasonable person on notice that something was very wrong with their case. It is not the intent of this court to excuse Slattery from the poor manner in which this case was handled, but to look at the situation in its entirety and determine if there was sufficient evidence in the record upon which the trial court based its finding of fact. The record clearly shows that the Smiths were upset with Slattery when he reported on the status of their case prior to December 10, *250 1999, and therefore, they had adequate warning to place them on notice that they should seek the advice of another attorney long before the prescriptive period expired.
In conclusion, we find the trial court was not manifestly erroneous in holding that by December 10, 1999, the Smiths had a sufficient factual basis to know that Slattery had not what he could have done to prevent dismissal of the medical malpractice suit by abandonment.
Accordingly, for the reasons stated above, we affirm the judgment of the trial court granting the exception of prescription/peremption in favor of appellees and assess costs to the Smiths.
AFFIRMED.
NOTES
[1] The original petition was signed by Slattery, an attorney with the law firm of McConnell & Slattery and Johnson, an attorney with the law firm of Campbell, Campbell & Johnson, predecessor to the firm of Campbell, Campbell & Marvin.