997 So.2d 23 (2008)
Scott McGUIRE & Sharon McGuire, Plaintiffs-Appellants
v.
MOSLEY ROGERS TITLE COMPANY, L.L.C. & Lance G. Mosley, Defendants-Appellees.
No. 43,554-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
Rehearing Denied October 16, 2008.
*25 Joey W. Hendrix, Shreveport, for Appellants.
Cook, Yancey, King & Galloway, by Herschel E. Richard, Jr., Jason B. Nichols, Shreveport, for Appellee, Lance G. Mosley.
Mayer, Smith & Roberts, by David F. Butterfield, Shreveport, for Appellees.
P. Carter Rogers, Pro Se.
Before STEWART, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Plaintiffs, Scott McGuire & Sharon McGuire, sued Defendants, Mosley Rogers Title Company, L.L.C. & Lance G. Mosley, attorney at law, for legal malpractice and other related claims in connection with a real estate transaction. The trial court ruled that Plaintiffs' claims against both Defendants were prescribed. Plaintiffs appeal. For the reasons set forth herein, we affirm.

*26 FACTS
Plaintiffs sought legal advice from Mr. Mosley related to a sale of real estate to Benton Road BarBQ Real Estate, L.L.C. (hereinafter "the L.L.C."). The real estate sale was structured such that half the purchase price would be seller financed by Plaintiffs and half would be financed by the buyer. In order for the buyer to obtain a loan for its half of the purchase price, Plaintiffs agreed to subordinate their mortgage to the mortgage of the lender. According to Plaintiffs, they required personal guarantees from the three members of the L.L.C. as part of their agreement to subordinate their mortgage. Plaintiffs contend that they discussed this requirement with Mr. Mosley, who assured them that he would obtain such personal guarantees.
Plaintiffs assert that Mr. Mosley referred them to Mosley Rogers Title Company, L.L.C. (hereinafter "MRT") for the closing. They also allege that, at some point in the transaction, Mr. Mosley referred them to his partner, Carter Rogers, to handle the commercial transaction, but assured Plaintiffs that personal guarantees were in place and that their subordinated security interest in the property was adequate to protect them in case of default. Plaintiffs maintain that they believed that either Mr. Mosley or Mr. Rogers would prepare the closing documents to this effect and that they placed their trust in them. Plaintiffs further allege that they believed Mr. Carter was an attorney, when, in fact, he has never been an attorney.
Plaintiffs further allege that, at the closing on March 20, 2003, they did not meet either Mr. Mosley or Mr. Rogers and that neither the notary nor witnesses were present at the signing. They describe the closing as papers being shuffled past them in a hurried fashion with indications where to sign. They received a copy of the documents via certified mail on March 31, 2003. Plaintiffs did not open the envelope at that time and did not review the documents. A copy of the return receipt signed by Mr. McGuire, however, is contained in the record.
The buyer made timely payments to Plaintiffs until June or July 2004 when Plaintiffs received several checks that were returned for nonsufficient funds. In response, Plaintiffs consulted with an attorney and that attorney was with Plaintiffs when they opened the envelope containing the closing documents. While reviewing the documents in July 2004, Plaintiffs first discovered that the note securing the seller-financed portion of the purchase price did not have personal guarantees from the members of the L.L.C., nor were there any separate personal guarantees included in the closing documents.
Plaintiffs filed suit on July 11, 2005, against Defendants alleging legal malpractice and other claims. Defendants each filed an exception of prescription. The trial court granted both exceptions and dismissed both Defendants with prejudice. With regard to Mr. Mosley, the trial court reasoned that, under La. R.S. 9:5605 the prescriptive periods for actions for legal malpractice by Plaintiffs was a year from when they discovered or should have discovered the alleged legal malpractice. The trial court found that Plaintiffs should have discovered the alleged legal malpractice in March 2003 when it received the closing documents by mail, but failed to review them. The trial court also ruled that Plaintiffs' claim against MRT was controlled by the time limitations for legal malpractice under La. R.S. 9:5605 or the time limitations for actions against notaries under La. R.S. 35:200. The trial court further reasoned that the 2004 amendment *27 to La. R.S. 35:200, providing a one-year prescriptive period from when the alleged act, omission or neglect is discovered or should have been discovered, was intended by the legislature to be retroactive and, therefore, governed the suit. Having previously ruled that the legal malpractice claim had prescribed, the trial court ruled that Plaintiffs' claim against MRT was, also, prescribed because they should have discovered their potential claim in March 2003 when they received the closing documents by mail.
Plaintiffs appealed and the trial court granted Plaintiffs' motion for appeal. The trial court's deputy clerk of court sent Plaintiffs' counsel notice of the estimated costs of appeal by certified mail on November 20, 2007. That notice was received and signed for on November 22, 2007. Plaintiffs, however, failed to timely pay the estimated costs of appeal despite the trial court's granting of their motion for extension of payment of costs of appeal. Both Defendants, separately, filed motions to dismiss based on Plaintiffs' failure to pay costs of appeal. Defendant Mosley's counsel attached to his motion to dismiss an order stating that all claims against Plaintiffs were dismissed with prejudice. The trial court signed the order February 7, 2008. Counsel for Defendant MRT attached to his motion to dismiss appeal an order that Plaintiffs show cause on March 10, 2008, why the appeal should not be dismissed. The trial court signed this order on February 8, 2008. This show cause hearing was never held and the estimated costs of appeal were eventually paid as stated in the trial court's order dated February 29, 2008, setting a return date of April 7, 2008.

DISCUSSION

Dismissal of Appeal
A preliminary issue before the court is whether Plaintiffs have a viable appeal before this court in regard to either Defendant. MRT never had an order dismissing the appeal, only an order scheduling a hearing; therefore, the appeal from the judgment in favor MRT was never dismissed and remains viable. We, therefore, address the propriety of the trial court's dismissal of the appeal from the judgment in favor of Mr. Mosley.
La. C.C.P. art. 2126 governs the payment of costs of appeal and provides in paragraph E that, if the appellant fails to pay the estimated costs within the time specified, the trial court, after a hearing, may dismiss the appeal on the grounds of abandonment. An appeal cannot be dismissed without a hearing. Strouse v. M & M Porperties, 23,792 (La.App. 2d Cir.3/3/00), 753 So.2d 434; Reed v. Cloumbia/HCA Information Service, Inc., 99-1315 (La.App. 5th Cir.4/25/00), 761 So.2d 625; Paddio-Johnson v. St. Helena Head Start, 610 So.2d 901 (La.App. 1st Cir.1992). The trial court erred in dismissing the appeal from the judgment in favor of Mr. Mosley without first holding a hearing. We, therefore, find the order dismissing the appeal to be without effect and we will consider Plaintiffs' appeal as it concerns both Defendants. Strouse, supra.

Prescription on Legal Malpractice Claims
Plaintiffs contend that Mr. Mosley committed legal malpractice by failing to prepare the promissory note with personal guarantees from the members of the L.L.C. or to prepare separate personal guarantees. Although they failed to review the documents, Plaintiffs argue that they were reasonable in relying on the assurances of Mr. Mosley. Moreover, they argue that the time limitations were suspended under the theory of contra non valentem.
*28 When evidence is received at the trial of the peremptory exception, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard as articulated in Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Smith v. Slattery, 38,693 (La.App. 2d Cir.6/23/04), 877 So.2d 244, writ denied, 04-1860 (La.10/29/04), 885 So.2d 592. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed evidence differently. Stobart, supra. The trial court in the case sub judice conducted a hearing on Defendants' exceptions of prescription, including the taking of testimony and evidence. We, therefore, review the trial court's decision for manifest error.
Prescription on claims for legal malpractice is governed exclusively by La. R.S. 9:5605, which provides, in pertinent part, as follows:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
A straightforward reading of the statute provides two peremptive periods. Teague v. St. Paul Fire & Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266. Under La. R.S. 9:5605(B), both the one-year and three-year periods are peremptive and, thus, cannot be renounced, interrupted or suspended under La. C.C. art. 3461. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291. A cause of action must be brought within one year from the date of alleged malpractice or one year from the date the plaintiff discovered or should have discovered the alleged malpractice, within the three-year limit from the date of the alleged malpractice. Teague, supra. The statute thus includes an equitable suspension of the one-year peremption period in a manner that resembles the discovery rule contained with *29 the doctrine of contra non valentem.[1]Teague, supra; Huffman v. Goodman, 34,361 (La.App. 2d Cir.4/4/01), 784 So.2d 718, writ denied, 01-1331 (La.6/22/01), 794 So.2d 791 (analyzing the same language under La. R.S. 9:5606(D)). Beyond this exception, however, the jurisprudence provides that contra non valentem does not apply to legal malpractice claims. Teague, supra; Huffman, supra; Lambert v. Toups, 99-72 (La.App. 3d Cir.10/13/99), 745 So.2d 730. Thus, legal malpractice actions must be filed no later than one year from the date the plaintiff discovered, or should have discovered, the alleged malpractice or three years from the date of the alleged malpractice, whichever comes first. Brumfield v. McElwee, 07-0548 (La. App. 4th Cir.1/16/08), 976 So.2d 234.
Furthermore, this court has held that the Louisiana Supreme Court, in Reeder, supra, effectively rejected the former realization of damages analysis applied before the enactment of La. R.S. 9:5605 in 1990. Smith v. Slattery, supra; Cardneaux v. Dollar, 31,718 (La.App. 2d Cir.3/31/99), 731 So.2d 928; see also, Kennedy v. Macaluso, 99-3016 (La.App. 1st Cir.2/16/01), 791 So.2d 697, writ denied, 01-0691 (La.5/4/01), 791 So.2d 655. Under the earlier analysis, the courts fixed the running of prescription not from the time of malpractice, but from the time of any appreciable and actual harm flowed from the legal malpractice. See Braud v. New England Ins. Co., 576 So.2d 466 (La.1991).
Moreover, the peremptive period does not begin to run against a party who is ignorant of the facts upon which his claim is based, unless such nescience is willful, negligent or unreasonable. Smith v. Boothe, 28,065 (La.App. 2d Cir.2/28/96), 669 So.2d 682, writ denied, 96-0821 (La.5/10/96), 672 So.2d 928. The ultimate issue is the reasonableness of the tort victim's action or inaction, in light of his education, intelligence and the nature of the defendant's conduct. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502. As the Louisiana Supreme Court recently summarized in Teague, supra:
Thus, under the provisions of La.Rev. Stat. § 9:5605, an action should not be found perempted if it is brought within one year of the date of discovery and the record shows that the claimant was reasonably unaware of malpractice prior to the date of discovery and the delay in filing suit was not due to willful, negligent, or unreasonable action of the client. . . . The "date of discovery" from which prescription or peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant. Put more simply, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiffs *30 position. (Internal citations omitted.)
Thus, the pertinent issue is when would it have been reasonable for Plaintiffs to discover the alleged legal malpractice.
Plaintiffs testified that they received the closing documents in March 2003 in the mail but never proceeded to open and review them until July 2004. Mr. McGuire testified that, if he had opened the envelope and reviewed the documents, he would have discovered the allegedly missing personal guarantees of the members of the L.L.C. While Plaintiffs argue that they were reasonable in relying on the assurances of their attorney that their interests would be protected, we cannot agree. The real estate sale with the L.L.C. was for a sizable about of money. By allegedly requiring personal guarantees and seeking the services of Mr. Mosley, Plaintiffs demonstrated that they understood the potential risk and level of complexity of the transaction. We find it unreasonable that they did not at the very least open and review the closing documents when they received them in March 2003. We, therefore, hold that Plaintiffs should have known of the alleged malpractice in March 2003 and that their claim for legal malpractice against Mr. Mosley had prescribed when they filed the suit sub judice in July 2005.

Prescription of claims against MRT
Plaintiffs also argue that the trial court erred in finding that their claims against MRT had also prescribed. The trial court based its ruling on La. R.S. 35:200, which provides, in pertinent part:
A. No action for damages against any notary public duly commissioned in any parish in this state, any partnership of such notaries public, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination answerable for the damage occasioned by such notary public in the exercise of the functions of a notary public, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide notarial services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to July 1, 2004, actions shall, in all events, be filed in a court of competent jurisdiction and proper venue on or before July 1, 2007, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive scopes within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
The first consideration is whether this statute properly applies to this case. La. R.S. 35:200 applies only to any notary public or entities that are responsible for "the damage occasioned by such notary public in the exercise of the functions of a notary public." Moreover, the statute applies *31 to damages "arising out of an engagement to provide notarial services." The claims of Plaintiffs arise out of the alleged failure of MRT to prepare the proper documents for the personal guarantees. The issue, therefore, is whether such services are actually functions of a notary public or part of notarial services. La. R.S. 35:2 defines the general powers of a notary public and provides, among other powers, that they have the power "To . . . make. . . all contracts and instruments of writing." We find that, under this power, the alleged error in document preparation falls within the ambit of La. R.S. 35:200.
As La. R.S. 35:200 provides the same peremption periods as La. R.S. 9:5605, discussed above, the pertinent inquiry is when the alleged malpractice should have been discovered. As the analysis and the result are the same, we will not be repetitive here; and, for the reasons set forth above, we find that Plaintiffs should have discovered the alleged malpractice by MRT when they received the closing documents in the mail in March 2003. In addition, any claims allegedly arising out of a breach of contract by MRT for its document preparation fall within La. R.S. 35:200, as it covers all claims against any notary public, "whether based upon tort, or breach of contract," and is also perempted. The claims of Plaintiffs against MRT are, therefore, perempted.
Plaintiffs also argue that the plain language of La. R.S. 35:200(B) prevents their claims from prescribing. La. R.S. 35:200 was amended with entirely new language, effective May 29, 2004, including the one-year and three-year peremptive periods. As quoted above, La. R.S. 35:200(B) also provides that:
However, with respect to any alleged act, omission, or neglect occurring prior to July 1, 2004, actions shall, in all events, be filed in a court of competent jurisdiction and proper venue on or before July 1, 2007, without regard to the date of discovery of the alleged act, omission, or neglect.
Plaintiffs submit that, under this savings clause, they had until July 1, 2007 to file their claim. We disagree.
While no court has yet interpreted this clause of La. R.S. 35:200, it is identical in essentials to the savings clause found in La. R.S. 9:5605, as quoted above. In applying La. R.S. 9:5605, this same argument has been considered and rejected. Carroll v. Wolfe, 98-1910 (La.App. 1st Cir.9/24/99), 754 So.2d 1038; Vaughn v. Slaughter, 94-0552 (La.App. 1st Cir.3/3/95), 653 So.2d 36, writ denied, 95-0828 (La.5/5/95), 654 So.2d 339. The savings clause was intended to avoid barring lawsuits where claimants were ignorant of malpractice that was committed before July 1, 2004. See Morgan v. Campbell, Campbell & Johnson, 27,390 (La.App. 2d Cir.9/27/95), 661 So.2d 540. It does not, however, extend the one-year period from the time the malpractice was discovered or should have been discovered. Carroll, supra; Vaughn, supra. The claims of Plaintiffs against MRT are, therefore, perempted.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs of appeal are assessed to Plaintiffs, Scott McGuire & Sharon McGuire.
AFFIRMED.
CARAWAY, J., concurs in part and dissents in part with written reasons.
CARAWAY, J., concurring in part and dissenting in part.
I concur in the majority's dismissal of the suit against the attorney, Lance Mosley. The time that the plaintiffs should have known of the alleged error regarding the personal guarantees was at the end of March 2003 when they received the closing *32 documents. Any claim against Mosley, personally as an attorney, and any claim against the title company, MRT, became subject at that time to the applicable prescription/peremption periods.
I respectfully dissent concerning the application of Act 77 of 2004 (La. R.S. 35:200) to the alleged claim for breach of contract which the plaintiffs present against the title company. It is undisputed that at the end of March 2003 when plaintiffs should have learned of the problem, the alleged breach of the contractual undertaking by the title company was subject to a ten-year prescriptive period. La. C.C. art. 3499. So this new act pertaining to notaries, effective July 1, 2004, is now said to apply to shorten the prescriptive period on contractual claims against title companies, and in this case, to shorten the ten-year prescriptive period which had already begun to run for over a year before the new act.
In the first place, it is far from clear to me that the new act applies to the contractual undertaking of a title company for an omission by the company. A notary did not "exercise the functions of a notary public" when the title company failed to prepare disputed personal guarantees in this instance. Such credit-related contracts can be prepared and supplied by the title company or other financial institution without a function performed by a notary. Just because a title company may have agents/employees who are notaries does not make every obligation of the title company subject to the peremption/prescription of the new act.
Nevertheless, even assuming a breach of contract caused by a notary in this case, I disagree that the language of the retroactivity provision of the statute caused the prescription to run before the plaintiffs' filing of suit on July 11, 2005. That provision states:
[W]ith respect to any alleged act, omission, or neglect occurring prior to July 1, 2004, actions shall, in all events, be filed in a court of competent jurisdiction and proper venue on or before July 1, 2007, without regard to the date of discovery of the alleged act, omission, or neglect.
When the words of legislation are clear and unambiguous and lead to no absurd consequences, the law shall be applied as written. La. C.C. art. 9. This provision literally states that any claim against a notary existing as of July 1, 2004 (to which the liberative prescription of ten years may have otherwise been applicable), must be filed on or before July 1, 2007. This reading of the law would cause the prescription running on the plaintiffs' claim in this case to toll under a shortened period in 2007 instead of running through March of 2013. That is the retroactive application literally called for by the language of the new act, and that application of the statutory language means that plaintiffs' suit was filed timely in July 2005. The majority's view appears to be based on the general interpretation given to changes in the laws of prescription and their effect on existing causes of action when the legislation is silent. "Procedural . . . laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." La. C.C. art. 6. Here, the legislature expressly addressed the matter and set a specific date to file suit on all pre-existing claims by 2007. The plaintiffs' claim against MRT has not prescribed.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, PEATROSS & LOLLEY, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] Our courts have recognized the doctrine of contra non valentem non currit praescriptio, which means that prescription does not run against a person who could not bring his suit. Carter v. Haygood, 04-0646 (La. 1/19/05), 892 So.2d 1261. There are four categories or applications of contra non valentem that act to suspend liberative prescription: (1) when there is a legal cause that prevented courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) when there is a condition coupled with the contract or connected with the proceeding that prevent the creditor from suing or acting; (3) when the debtor himself did some act that effectually prevented the creditor from availing himself of his cause of action; and (4) when the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Id.