STONE, J.
*1135 The trial court granted a peremptory exception filed by Orr Motors of Little Rock, Inc. d/b/a Sparks Nissan Kia Real Estate, L.L.C., and found Emma W. McDonald failed to prove that the contract whereby she purchased a new car should be rescinded. For the reasons set forth herein, we affirm the judgment of the trial court.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On November 30, 2010, Emma W. McDonald ("McDonald") entered into a contract with Orr Motors of Little Rock, Inc. d/b/a Sparks Nissan Kia Real Estate, LLC ("Sparks Nissan"), wherein McDonald purchased a 2011 Kia Optima LX ("the Kia") from Sparks Nissan for $23,225 before tax ("the transaction").
On the date of the transaction, McDonald was in her late fifties and had previously been prescribed a number of medications, including medications for blood pressure and diabetes. She was not out of any of the medications; however, she had run out of the test strips for her glucometer which tests her glucose levels. She needed to test her glucose level to determine how much insulin she should take. She drove herself to Walgreens. Upon her arrival, she discovered the pharmacy did not have the brand of test strips she required. She chose not to purchase a new meter and left the pharmacy without any test strips.
After leaving Walgreens, McDonald drove around to "unwind," as her blood sugar level was high due to her inability to take her insulin. During her drive, she stopped at Sparks Nissan dealership where she was greeted by salesman Jesse Eldridge ("Eldridge"). Eldridge allowed McDonald to test drive the Kia while he rode with her. After all credits were applied and sales tax and other fees were charged, McDonald financed a total amount of $18,991.84. As part of the purchase, McDonald traded in her 1995 Ford Contour. Her trade-in allowance for the vehicle was $1,650.[1] Additionally, McDonald issued two $2,500 checks to the dealership as down payment for the Kia, including one post-dated check. McDonald drove the Kia home that same day.
The next day, McDonald went back to Sparks Nissan, as well as Capital One Auto Finance ("Capital One"), the institution that financed the Kia, and asked to rescind the transaction. According to McDonald, when she purchased the Kia, she was mentally impaired due to her high blood sugar levels and had no recollection of the purchase. Sparks Nissan refused to rescind the sale. McDonald stopped payment on the two $2,500 checks and did not make any payments on the Kia. Capital One repossessed the Kia and, thereafter, sold it at an auction. The proceeds of the sale were applied to McDonald's loan, leaving a remaining balance of $198.[2]
On January 28, 2011, McDonald filed suit against Sparks Nissan seeking rescission of the transaction alleging she was "so tired or lacking in her ability to understand since she had not taken all her medications during the day of the date of sale, and that consent by her was lacking to create a binding contract." McDonald also sought the return of her trade-in vehicle. Sparks Nissan filed an answer to McDonald's petition on February 10, 2011, *1136 seeking a judgment against McDonald in the amount of $5,000, the total sum for the down payment checks McDonald stopped payment on.
On July 22, 2014, McDonald filed a supplemental and amended petition asserting the transaction constituted fraudulent practices and was a violation of the Louisiana Unfair Trade Practice Act ("LUTPA"). McDonald alleged that Sparks Nissan, in an effort to get Capital One to agree to finance the Kia, represented that McDonald had paid a $5,000 down payment, when in fact one of the $2,500 checks was post-dated; and that Sparks had represented that her monthly income was $3,500, when in fact it was not.
On August 2, 2014, Sparks Nissan filed a dilatory exception of vagueness and/or ambiguity and peremptory exceptions of no right of action and/or no cause of action, both of which were denied by the trial court. Sparks Nissan filed an additional peremptory exception on December 9, 2012, seeking to dismiss all claims asserted by McDonald under LUTPA because she failed to bring the claims within the applicable one-year peremptive period. The trial court sustained Spark Nissan's exception of peremption, finding that McDonald's causes of action set forth in the supplemental and amending petition were perempted as they were not filed within one year of the date of the sale, and they did not relate back to McDonald's original petition. The trial court dismissed all the causes of action under LUTPA set forth in McDonald's supplemental and amended petition.
A trial on the claims stated in McDonald's original petition and on Spark Nissan's counterclaim was held on August 9, 2017. After all evidence had been adduced, the trial court entered judgment against McDonald, finding she failed to prove the sale of the Kia should be rescinded. The trial court also denied Spark Nissan's counterclaim against McDonald.
DISCUSSION
McDonald essentially raises two assignments of error on appeal. First, McDonald asserts the trial judge erred as a matter of law in sustaining Sparks Nissan's exception of peremption. McDonald asserts her supplemental and amended petition adding the LUTPA cause of action relates back to her original petition in accordance with La. C.C.P. art. 1153, and therefore, her claim did not prescribe. In her second assignment of error, McDonald contends the trial court erred in finding she did not prove her claim for rescission.
Peremptory Exception of Peremption
Peremption is defined in La. C.C. art. 3458 as a period of time during which a right can be exercised and provides that "[u]nless timely exercised, the right is extinguished upon the expiration of the peremptive period." In Cote' v. Hiller, 49,623 (La. App. 2 Cir. 02/27/15), 162 So.3d 608, it is explained that, although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation; peremption, however, extinguishes or destroys the right.
La. R.S. 51:1409 establishes causes of action under the LUTPA and defines the time limits within which actions must be brought. It states in pertinent part as follows:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair *1137 or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.
* * *
E. The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.
Although the LUTPA states the action provided by the section "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action," the language has been interpreted as creating a peremptive, rather than a prescriptive period. See Glod v. Baker, 04-1483 (La. App. 3 Cir. 03/23/05), 899 So.2d 642, writ denied, 05-1574 (La. 01/13/06), 920 So.2d 238. The Glod court noted that the general rule is that peremption, as opposed to prescription, cannot be interrupted or suspended; and it, therefore, found that the time period was not tolled or suspended by the alleged continuing tort.
The party raising an exception of prescription or peremption ordinarily bears the burden of proof at the trial of a peremptory exception. McKinley v. Scott, 44,414 (La. App. 2 Cir. 07/15/09), 17 So.3d 81, 83. However, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed. Id. When evidence is introduced at the hearing on the peremptory exception, the factual conclusions of the district court are reviewed under the manifest error-clearly wrong standard of review. McGuire v. Mosley Rogers Title Co. L.L.C., 43,554 (La. App. 2 Cir. 09/17/08), 997 So.2d 23, 28, writ denied, 08-2728 (La. 01/30/09), 999 So.2d 757. La. C.C.P. art. 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading.
Having reviewed this record, we find the trial court was not manifestly erroneous in its determination that McDonald did not file a timely LUTPA cause of action against Sparks Nissan. Any alleged unfair or deceptive acts or practices would have occurred on November 30, 2010, the day McDonald purchased the Kia. She was required to raise a claim under LUTPA by or before November 30, 2011. McDonald failed to do so. Even if we accept McDonald's argument that prescription was interrupted at the time she filed the original petition, a claim under LUTPA still had to be raised within one year of January 28, 2011, the date the original petition was filed. McDonald's supplemental and amended petition, wherein she asserts the LUTPA claim, was not filed until July 22, 2014 --- almost three and a half years after the filing of the original petition. Moreover, McDonald's original petition failed to state a cause of action, reference, or otherwise elude to a claim of fraud or unfair trade practices. Accordingly, McDonald's supplemental and amended petition cannot relate back to her original petition. This assignment of error is meritless.
Rescission of the sale of the Kia
McDonald next argues the trial court was manifestly erroneous when it determined she did not sufficiently prove the sale of the Kia should be rescinded *1138 because she lacked the mental capacity to enter into a contract. Under the manifest error standard of review, a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Snider v. Louisiana Med. Mut. Ins. Co., 13-0579 (La. 12/10/13), 130 So.3d 922 ; Rosell v. ESCO, 549 So.2d 840 (La. 1989). Under this standard, determinations of fact are entitled to great deference on review. McGlothlin v. Christus St. Patrick Hosp., 10-2775 (La. 07/01/11), 65 So.3d 1218 ; Guillory v. Lee, 09-0075 (La. 06/26/09), 16 So.3d 1104.
The linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State, Through DOTD, 94-2370 (La. 04/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that, had it been sitting as a trier of fact, it would have ruled differently. Id. If there are two permissible views of the evidence, the factfinder's choice between them can virtually never be manifestly erroneous or clearly wrong. Id.
A contract is formed by consent of the parties established through offer and acceptance, which may be made orally, in writing or by action or inaction that under the circumstances indicates consent. La. C.C. art. 1927. Under Louisiana law, formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. The court must find there was a meeting of the minds of the parties to constitute the requirement of consent. Crowe v. Homesplus Manufactured Housing, Inc., 38,382 (La. App. 2 Cir. 06/21/04), 877 So.2d 156. The existence or nonexistence of a contract is a question of fact. The determination of the existence of a contract is a finding of fact not to be disturbed unless clearly wrong. Dubois Const. Co. v. Moncla Const. Co., Inc., 39,794 (La. App. 2 Cir. 06/29/05), 907 So.2d 855.
All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting. La. C.C. art. 1918. The presumption is that all persons have capacity to contract; lack of capacity must be shown by clear and convincing evidence. Succession of Hollis, 43,315 (La. App. 2 Cir. 06/18/08), 987 So.2d 387, writ denied, 2008-1632 (La. 10/24/08), 992 So.2d 1035.
McDonald contends that on the day she purchased the Kia, she had not taken her insulin, and therefore, she was not capable of making reasonable decisions. The trial court determined that McDonald failed to prove this assertion. We agree. The only evidence presented by McDonald concerning her mental capacity on the day of the sale was her own testimony. She offered no medical evidence or other evidence to establish that her lack of insulin affected her mental capacity in a way that would vitiate her ability to consent to the transaction. McDonald test drove the Kia without incident and signed numerous documents as is customary to purchase a vehicle, all in the presence of a salesman and financial manager. Both testified McDonald never gave them any impression, in her words or actions, that she did not know and understand what she was doing in purchasing the Kia. We find that McDonald was fully cognizant when she made the purchase, and her subsequent buyer's remorse cannot undo the sale.
Spark Nissan's $5,000 Reconventional Demand
Finally, Sparks Nissan's claims McDonald owes it $5,000 for the stop payment she placed on the two down payment checks she wrote. In its Reasons for Judgment, the trial court made the following observation:
*1139 Based on the amount recovered at the subsequent sale and considering the fair dealings the parties had for one another including the amount credited to Ms. McDonald for the trade in and the amount the vehicle actually sold for, the Court finds the Defendant in Reconvention did not prove its case against the Plaintiff in Reconvention in proving Ms. McDonald liable for $5,000.
The trial court evidently weighed McDonald's loss against Sparks Nissan's and determined that they were equally balanced. We find no error in its reasons for judgment.
CONCLUSION
For the foregoing reasons, we find the trial did not err in granting Sparks Nissan's peremptory exception nor did the trial court err in its determination that McDonald did not prove the sale of the Kia should rescinded. Finally, the trial court did not err when it declined Sparks Nissan's demand for the $5,000 payment. Costs are to be equally split between the parties.
AFFIRMED .

Sparks Nissan attempted to sell the Ford Contour for a listed price of $2,995; however, it was sold to a wholesaler for $1,000.

Although demand for the $198 was made on McDonald, Capital One never instituted any action to recover this amount.